# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

IVORY S. GLENN,

    Plaintiff,

vs.                                        Case No. 4:13cv160-RH/CAS

C. RICHARDSON, M.D.,

    Defendant.

_____/

## THIRD REPORT AND RECOMMENDATION[1]

Pending in this case is Defendant Richardson's renewed motion to dismiss. Doc. 67. Dr. Richardson had previously moved to dismiss this case arguing that, among other things, Plaintiff failed to exhaust administrative remedies. Doc. 36. At that time, however, Dr. Richardson did not include copies of the relevant grievances to support the argument raised and the motion to dismiss was denied. Dr. Richardson was, nevertheless, permitted to "file a renewed motion supported by the relevant documents." Doc. 50 at 3. The renewed motion, doc. 67, has now been filed and Mr. Glenn has filed an amended response. Doc. 71. The renewed motion to dismiss is ready for a ruling.

---

[1] The first Report and Recommendation recommended that Plaintiff Ivory Glenn's claims against Defendant Smith, a nurse, be dismissed because process was never served on that Defendant. Docs. 47, 50. That recommendation was adopted. *Id.*

**Allegations of the complaint**

Plaintiff, a pro se prisoner, filed a second amended civil rights complaint, doc. 20, on October 15, 2013.  The events of this case arose on May 31, 2012, and culminated on June 18, 2012, when Plaintiff's right index finger was amputated behind the second joint due to gangrene poisoning.  Doc. 20 at 5-6.

On the evening of May 31, 2012, Plaintiff was helping a paraplegic inmate get from his wheelchair to a folding shower seat.  *Id.* at 5.  The seat collapsed and crushed Plaintiff's right index finger and a broken, rusty part of the shower seat punctured his finger.  *Id.*  Plaintiff, who is diabetic, reported the injury to the dormitory officer as he was "bleeding profusely."  *Id.*  The officer only advised Plaintiff to report to sick call the following morning, so Plaintiff personally bandaged his finger that night and declared a "medical emergency" the next morning.  *Id.*

Plaintiff was examined by Nurse Smith on June 1, 2012, who thought his finger looked broken.  *Id.*  The nurse put ointment on Plaintiff's finger, bandaged it, and told Plaintiff to return on Monday if his finger did not get better.  *Id.*  No x-rays were taken of his injured finger at that time.  *Id.*

On Monday, June 4, 2012, Plaintiff returned to sick call because his finger was worse, "very swollen with that gangrene poison starting to set into the finger."  *Id.*  Plaintiff was evaluated on that day by Dr. Richardson, the Chief Health Officer, who prescribed an antibiotic medication for Plaintiff's finger.  *Id.* at 5-6.  Plaintiff claims he never received the medicine.  *Id.* at 6.  Defendant Richardson directed Plaintiff to return in two days.  *Id.*

When Plaintiff returned on June 6th, he was "much worse" and alleged that his entire hand was swollen.  Doc. 20 at 6.  Plaintiff states that Dr. Richardson was "well aware" that Plaintiff was diabetic and, after giving cursory treatment to Plaintiff's finger and hand, Plaintiff was asked to step out of the room.  *Id.*  Plaintiff alleges that Dr. Richardson made a telephone call to Dr. Jorge at the Reception and Medical Center (RMC) in Lake Butler, Florida, and Plaintiff was transferred there that same day.  *Id.*

On June 7, 2012, Plaintiff was examined by Dr. Ong, a plastic surgeon, who advised Plaintiff that he "should have been treated immediately."  *Id.*  Dr. Ong told Plaintiff the delay in treatment "would probably cost you your finger."  *Id.*

Dr. Ong performed surgery on Plaintiff's finger on June 7, 2012, but a week later, on June 14th, a second surgery was necessary to "clean out the gangrene poison that had set into the plaintiff's finger . . . ."  *Id.*  Plaintiff spent ten days in the hospital at RMC with daily dressing changes.  *Id.*  Twice, Dr. Ong lanced and cleaned the wound.  *Id.*  However, on June 18, 2012, Plaintiff was transferred to Jacksonville Memorial Hospital where Dr. Ong performed a third surgery, this time amputating Plaintiff's right index finger behind the second joint.  Once again, Dr. Ong told Plaintiff that his "finger wasn't treated properly in time for me to save it."  *Id.*[2]

Plaintiff alleges that the delay in providing him proper medical care resulted in the loss of his index finger on his right hand, which is Plaintiff's dominate hand, in violation of the Eighth Amendment.  *Id.* at 7-8.  Plaintiff contends "no meaningful medical treatment was offered until a full seven (7) days" after his injury.  *Id.* at 7.  Plaintiff seeks

---

[2] Attachment A to the second amended complaint is a photo of Plaintiff's hand, clearly revealing the amputated finger.  Doc. 20 at 9.

a declaratory judgment, compensatory damages of $250,000.00, punitive damages of $500,000.00, and to have Defendants pay all court costs.  *Id.* at 8.

**Renewed Motion to Dismiss, doc. 67**

Dr. Richardson renews the argument that Plaintiff's second amended complaint should be dismissed because Plaintiff failed to exhaust administrative remedies prior to filing this litigation.  Doc. 67 at 6.  Specifically, as to formal grievance log number 1208-209-003, Plaintiff did not challenge the response by filing an administrative appeal.  *Id.* at 8-9.  In addition, Dr. Richardson argues that formal grievance log number 1301-103-099 was returned as untimely and not addressed on the merits.  *Id.* at 9-10.

Additionally, Dr. Richardson contends that Plaintiff provided factually misleading statements concerning his grievances and appeal history and should be sanctioned.  *Id.* at 11-13.  Dr. Richardson argues that "dismissal is the appropriate sanction for intentionally misleading the court."  *Id.* at 12.

**Defendant's evidence**

Dr. Richardson demonstrates that after May 31, 2012, the date of Mr. Glenn's initial injury, he filed five grievances of a medical nature.  Doc. 67, Exhibits A, B (doc. 67-1 and doc. 67-2).[3]  Mr. Glenn also filed two appeals to the Department's Central Office concerning his medical needs: appeal #12-6-38181 which was denied on December 14, 2012, *see* doc. 67, Ex. C (doc. 67-3), and appeal #13-6-05223 which was "returned" on March 11, 2013.  Doc. 67, Ex. C (doc. 67-3).

---

[3] References to exhibits are listed first as to the hard paper copy and page number(s), followed by a reference (in parenthesis) to the corresponding document and page(s) in the electronic docket.  Both are referenced as a pro se prisoner does not have access to the electronic docket.

The earliest of the formal grievances was dated by Mr. Glenn on July 6, 2012, Grievance Log #1207-103-070.  Doc. 67, Ex. D (doc. 67-4).  In that grievance, Mr. Glenn complained of his medical treatment after the accident on May 31, 2012, and he sought pain medication, vocational assistance, and compensation for the loss of his finger.  *Id.* at 2.  Furthermore, Mr. Glenn explained that his injury was to his dominant hand and he required the assistance of another person to write the grievance.  *Id.*  The response to that grievance stated:

> Your Request for Administrative Remedy or Appeal has been received and evaluated.  Complaint in reference to an incident that you stated to have occurred on May 31, 2012.  Based upon the foregoing, your grievance is being returned without processing in accordance with F.A.C. Chapter 33-103.014(1)(e).

Doc. 67, Ex. D at 3 (doc. 67-4).  The response was signed on July 27, 2012, and stamped as "mailed" on that same date.  *Id.*

Also on July 6, 2012, Mr. Glenn wrote Grievance Log #1208-209-003.  Doc. 67, Ex. E (doc. 68-1).  In that grievance, Mr. Glenn again complained of his medical treatment after the accident on May 31, 2012, and he requested "effective pain medication," vocational assistance, and financial compensation for the loss of his finger. *Id.* at 2. The response to that grievance stated:

> Your formal grievance has been received, reviewed and responded to.
> Glenn Ivory DR#871986 1208-209-003  08/02/12.
>
> After review of medical file it is evident you were evaluated and treated for a finger injury on June 1st, 4th and 6th and then transferred to RMC to see the plastic surgeon on June 7th.
>
> You are being treated according to DOC policy.
>
> Grievance is denied.

Doc. 68, Ex. E (doc. 68-1 at 3). The response concluded by advising Mr. Glenn that he could "obtain further administrative review" of his complaint by using the appropriate form and forwarding his complaint to the Bureau of Inmate Grievance Appeals. *Id.* The grievance response was dated August 9, 2012. *Id.* Mr. Glenn did not appeal either of the responses received to those first two grievances. *See* doc. 67, Ex. C.[4]

Mr. Glenn also submitted a third formal grievance which he dated July 23, 2012, although it was not submitted until August 1, 2012. Doc. 67, Ex. F (doc. 67-9 at 3). That grievance, Grievance Log #1208-209-005, does not, however, concern the issues in this case but, rather, concerns a pass for medical boots. *Id.* Similarly, his fourth grievance, Grievance Log #1210-103-082, also concerned his need for orthopedic boots and not the issue concerning Plaintiff's finger. Doc. 67, Ex. G (doc. 67-9 at 5). Accordingly, Mr. Glenn's appeal of the response to that grievance is not relevant to the issue of exhaustion in this case. Doc. 67, Ex. H (doc. 67-9 at 9); *see* footnote 4 above.

Mr. Glenn's fifth formal grievance was Grievance Log #1301-103-099 which was dated January 13, 2013. Doc. 67, Ex. I (doc. 67-6). In that grievance, Mr. Glenn advised that he was grieving the medical care provided to him following the injury to his hand. *Id.* He complained that he had permanent disfigurement, had been enduring severe pain, and must relearn how to perform all tasks such as writing. *Id.* The response provided to Mr. Glenn on January 24, 2013, stated:

---

[4] Dr. Richardson's Exhibit C shows that Plaintiff submitted only two appeals concerning medical issues. Doc. 67, Ex. C (doc. 67-3 at 3). The earliest appeal is dated December 14, 2012, was assigned case #12-6-38181, concerned a pass for boots and was an appeal of Plaintiff's third grievance, Grievance Log #1210-103-082. Doc. 67, Ex. H (doc. 67-9). The second appeal was filed March 11, 2013, and assigned case #13-6-05223. Doc. 67, Ex. C (doc. 67-3 at 3). That appeal is discussed below.

> Your grievance has been received and evaluated.
>
> Complaint of deliberate indifference show by medical staff regarding a serious injury that occurred in June 1, 2012.  Grieving an incident that occurred in June 2012.
>
> Based on the foregoing your complaint is unfounded and grievances is [sic] RETURNED.

Doc. 67-6, Ex. I (doc. 67-6 at 3).  The grievance response then advised Mr. Glenn that he could "obtain further administrative review" of his complaint by using the appropriate form, "completing the form and providing attachments as required . . . and forwarding [his] complaint to the Bureau of Inmate Grievance Appeals, 501 South Calhoun Street, Tallahassee, Florida 32399-2500."  *Id.*  The response concluded by adding: "NOTE: Grievance Appeals to the Office of the Secretary (Bureau of Inmate Grievance Appeals) must be received within 15 calendar days from the date of the response to the formal grievance."  *Id.*

Finally, Mr. Glenn submitted an appeal of Grievance Log #1301-103-099 which he dated February 7, 2013.  Doc. 67, Ex. K (doc. 67-8 at 1).  Mr. Glenn complained that he did not receive appropriate medical care following his injury and he sought "full compensation" for the loss of his right index finger.  *Id.*  He also sought "rehabilitation in hopes of relearning how to use" his hand.  *Id.*

Mr. Glenn's appeal was assigned Log #13-6-05223.  Doc. 67, Ex. K (doc. 67-8 at 2).  A response was provided on March 11, 2013, which stated:

> Your administrative appeal to this office is in non-compliance with Chapter 33-103, Inmate Grievance Procedure, because your grievance at the institutional level was determined to be in non-compliance with the requirements of the rule.

> If you feel you need medical attention, contact the institutional medical department via the sick call/emergency process.
>
> You are past the time frame for grieving this issue.
>
> Your request for administrative appeal is being returned without action.

Doc. 67, Ex. K (doc. 67-8 at 2).

**Plaintiff's evidence**

Similar to Dr. Richardson's evidence, Mr. Glenn also provided a copy of Grievance Log #1208-209-003. Doc. 71, Ex. A (doc. 71 at 23-25). That formal grievance was "denied" on August 9, 2012. He also provided a copy of the receipt for his Grievance Log #12-6-38181 which was dated as received from Mr. Glenn on November 29, 2012. Doc. 71, Ex. B (doc. 71 at 27). Mr. Glenn submitted a copy of his Inmate Request Form in which he inquired about Grievance Log #12-6-38181. *Id.* The response to his request was to advise that Mr. Glenn was "mailed a copy of Grievance Log #12-6-38181 on 12-19-2012 with a response from Central Office." *Id.* Mr. Glenn's Exhibit C was a copy of the receipt for his Grievance Log #1301-13-099 which was dated as received from Mr. Glenn on January 17, 2013, the response, and his formal grievance. Doc. 71, Ex. C (doc. 71 at 29-32). Mr. Glenn also provided a copy of the receipt for Grievance Log #13-6-05223 which was dated as received from Mr. Glenn on February 14, 2013. Doc. 71, Ex. D (doc. 71 34-35). Included with that receipt is a copy of another Inmate Request Form which was dated by Mr. Glenn: March 6, 2013. *Id.* He requested a copy of the response from Central Office, presumably as a follow-up to the earlier Inmate Request. *Id.* Mr. Glenn also provided an affidavit which addresses the merits of his claim, but not the issue of exhaustion. Doc. 71 at 37-39).

**Analysis**

When the Prison Litigation Reform Act was enacted, Congress mandated that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement of § 1997e(a) is mandatory, whether the claim is brought pursuant to § 1983 or Bivens. Alexander v. Hawk, 159 F.3d 1321, 1324-26 (11th Cir. 1998).  The exhaustion requirement of § 1997e(a) is not jurisdictional, however.  Bryant v. Rich, 530 F.3d 1368, 1374 n.10 (11th Cir.), *cert. denied*, 129 S.Ct. 733 (2008) (citing Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2392, 165 L.Ed.2d 368 (2006)).  There is no discretion to waive this requirement or provide continuances of prisoner litigation in the event that a claim has not been exhausted prior to filing.  Alexander, 159 F.3d at 1325; *see also* Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); Brown v. Sikes, 212 F.3d 1205, 1207-08 (11th Cir. 2000) (finding that an inmate must "provide with his grievance all relevant information reasonably available to him" but he cannot be required to name individuals responsible for challenged conduct when he could not yet identify those persons).  The Court may not consider the adequacy or futility of administrative remedies, but only the availability of such. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (citing Alexander, 159 F.3d at 1323).  Even where an inmate seeks only monetary damages in a civil rights

case, he must complete the prison administrative process if it could provide some sort of relief on the complaint although no money could be given administratively.  Booth v. Churner, 531 U.S. 956, 121 S. Ct. 1819, 1821, 149 L. Ed. 2d 958 (2001).  "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court."  Jones v. Bock, 549 U.S. 199, 204-209, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007).[5]

      A prisoner must also comply with the process set forth and established by the grievance procedures.  *See* Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999).  In other words, not only must a prisoner exhaust a claim under § 1997e(a), the "PLRA exhaustion requirement requires proper exhaustion."  Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct. 2378, 2387 (2006) (concluding that "proper exhaustion" means complying with the specific prison grievance requirements, not judicially imposed requirements). Even if a grievance is initially denied as untimely, a prisoner must appeal the denial of the grievance.  *See* Harper v. Jenkin, 179 F.3d 1311 (11th Cir. 1999)(noting Georgia's inmate grievance procedures allow "the grievance coordinator to waive the time period for filing a grievance if 'good cause' is shown"); Bryant v. Rich, 530 F.3d at 1373.  If one claim is unexhausted, the Court may separate that claim out and proceed on only those claims that have been exhausted.  Brown, 212 F.3d at 1206, n.1; Jones, 549 U.S. at 223, 127 S.Ct. at 925 (rejecting a "total exhaustion rule" and requiring dismissal only of those unexhausted "claims," not an entire "action.").

---

     [5] The Court further rejected the view of the Sixth Circuit when it concluded that "nothing in the statute [§ 1997e(a)] imposes a 'name all defendants' requirement." Jones v. Bock, 549 U.S. at 217-219, 127 S.Ct. at 922-923 (concluding "that exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances.").

Defendants "bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (relying on Jones v. Bock, 549 U.S. 199, 127 S.Ct. at 910, 921, 166 L.Ed.2d 798 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints.")); Dixon v. United States, 548 U.S. 1, 8, 126 S.Ct. 2437, 2443, 165 L.Ed.2d 299 (2006) (stating that, as a "general evidentiary rule," the burdens of production and persuasion are given to the same party); Roberts v. Barreras, 484 F.3d 1236, 1240 (10th Cir. 2007) ("Jones does not spell out the proper burden of proof to use in evaluating exhaustion claims, but circuits that treated exhaustion as an affirmative defense prior to Jones have all put the burden of proof on defendants, to the extent that they addressed the issue.").

Factual disputes concerning the exhaustion of administrative remedies may be decided by the court sitting as fact-finder, "so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1373-74, 1376. Even though evidence[6] may be presented to support or refute a contention that a prisoner has not exhausted the grievance process, exhaustion is a "matter in abatement and not generally an adjudication on the merits," thus, it should be raised and treated as a motion to dismiss, not a summary judgment motion. *Id.*, at 1374-75.

---

[6] When motions to dismiss are based on issues not enumerated under Rule 12(b), then Rule 43(c) governs "which permits courts to hear evidence outside of the record on affidavits submitted by the parties." Bryant, 530 F.3d at 1377, n.16.

Mr. Glenn is housed within the Florida Department of Corrections which has an administrative grievance program, FLA. ADMIN. CODE R. 33-103.  Doc. 67 at 7.  Complaints "of a medical nature" are presented through a two-part grievances process.  *Id.* at 7 (*see* FLA. ADMIN. CODE R. 33-103.005(1), and 33-103.006(3)).  The rules direct that a "formal grievance" must be submitted to the Chief Health Officer "within 15 days from the date on which the incident or action being grieved occurred."  *Id.* (citing FLA. ADMIN. CODE R. 33-103.011(1)(b)(2)).  If the prisoner is dissatisfied with the response provided, he must proceed to the second step and file an appeal to the Office of the Secretary.  *Id. (*citing FLA. ADMIN. CODE R. 33-103.007).  The appeal must be received in the Secretary's Office "within 15 days of the date of the response to the formal grievance" and both the formal grievance and response must be attached to the appeal.  Doc. 67 at 7 (citing FLA. ADMIN. CODE R. 33-103.007(5)(a), and FLA. ADMIN. CODE R. 33-103.011(1)(c)).  The Rules also permit extensions of those time periods, such requests are granted as a matter of discretion.  FLA. ADMIN. CODE R. 33-103.011(2).  To be granted an extension of time, the inmate must demonstrate "to the satisfaction of the reviewing authority . . . that it was not feasible to file the grievance the relevant time periods and that the inmate made a good faith effort to file in a timely manner."  FLA. ADMIN. CODE R. 33-103.011(2).

Because none of Mr. Glenn's formal grievances were "granted," he was required to file an administrative appeal.  The evidence submitted demonstrates that only two appeals were filed by Mr. Glenn: Log #13-6-05223 and Log #12-6-38181.  The latter grievance appeal concerned Mr. Glenn's request for boots and is not relevant.  The only relevant grievance appeal is Log #13-6-05223.  Doc. 67, Ex. K (doc. 67-8).  The issue is

whether that appeal demonstrates exhaustion.  More precisely, it must be determined whether Mr. Glenn's grievances were rejected because they were untimely or decided on the merits.

The relevant formal grievance was Grievance Log #1301-103-099.  *Id.* at 3.  That grievance was dated by Mr. Glenn on January 13, 2013, and responded to on January 24, 2013.  *Id.* at 3-4. The response noted that Mr. Glenn was grieving an incident that occurred in June 2012.  *Id.*  Without any citation to the rules or explanation, the complaint was deemed "unfounded" and the grievance was "returned."  *Id.*

When this issue first arose in the original motion to dismiss, Dr. Richardson's contention was that Mr. Glenn's "appeal was returned as untimely because the underlying formal grievance was returned as untimely at the lower level."  Doc. 36-1 at 2.  After closely reviewing the response to the formal grievance which noted it was "received and evaluated," the undersigned concluded that Mr. Glenn had been given a "response on the merits" which found his complaint "unfounded."  Doc. 47 at 12.

It is now argued in the renewed motion to dismiss that "by using the word 'unfounded', [Dr. Richardson] meant that it was untimely in the context of the delay in receiving the grievance outside the fifteen (15) day time frame for filing formal grievances."  Doc. 67 at 5.[7]  Dr. Richardson notes that "use of the word 'unfounded' in the response was not the best choice of words and the response could have been worded better to convey the untimeliness of the grievance, the grievance was returned

---

[7] The explanation of the word "unfounded" is provided in Dr. Richardson's affidavit.  Doc. 68, Ex. J (doc. 68-2 at 2).

because it was outside the time frame for filing grievances . . . ." Doc. 68, Ex. J (doc. 68-2 at 2-3).

That assertion should be rejected because it is nonsensical. Unfounded is not the equivalent of untimely. Unfounded is commonly used when evaluating the merits of a complaint, not the timeliness of that complaint.

Moreover, the "unfounded" statement follows not just a citation to the event having occurred on June 2012, but to a statement noting the merits of Mr. Glenn's complaint, that "deliberate indifference [was] shown by medical staff regarding a serious injury . . . ." Doc. 67, Ex. I (doc. 67-6). A prisoner could reasonably have been confused as to whether his grievance was rejected as untimely or on the merits. That is especially true because the concluding statements at the end of the response advised Mr. Glenn that he "may obtain further administrative review" by sending an appeal with the copy of his complaint and the response to the Bureau of Inmate Grievance Appeals. Doc. 67, Ex. K (doc. 67-8 at 3). Another "note" below that statement specifically advised that "Grievance Appeals . . . must be received within 15 calendar days from the date of the response to the formal grievance." *Id.*

The Department's rules provide a list of reasons that a grievance may be returned "without a response on the merits." FLA. ADMIN. CODE R. 33-103.014(1). A grievance may be returned if "not received within 15 calendar days of the date on which the incident or action being complained about occurred." FLA. ADMIN. CODE R. 33-103.014(1)(e). However, when a prisoner has a grievance returned because it was not received within 15 days, the rule states that the prisoner "shall be told why the grievance was returned and told that in order to receive administrative review of his

complaint he must correct the defects and re-submit the grievance within the time frames set forth in Rule 33-103.011, F.A.C., unless instructed otherwise in the grievance response." FLA. ADMIN. CODE R. 33-103.014(2). The rule does not permit the refiling of a grievance that was refiled as untimely. *Id.*

Here, Mr. Glenn's grievance could properly have been returned because it was submitted approximately 6 months after the loss of his finger. The response noted that Mr. Glenn was grieving an incident from June 2012, but Mr. Glenn was not clearly instructed as to why it was returned. He was not told that it was returned because it was not timely filed, nor did the response cite to Rule 33-103.014. Moreover, Mr. Glenn was instructed that he "may obtain further administrative review" and advised that he must do so within 15 calendar days. The response was confusing and susceptible to conflicting interpretations.

Nevertheless, Mr. Glenn thereafter submitted grievance appeal Log # 13-6-05223.[8] As noted by Dr. Richardson, Mr. Glenn stated that he was enclosing the formal grievance which "was returned without being processed." Doc. 67 at 6 (citing doc. 67, Ex. K (doc. 67-8 at 1)). It seems apparent that although some prisoners may be confused about the status of the formal grievance, Mr. Glenn was not confused and knew that his grievance was rejected as untimely. Ultimately, the appeal was found to

---

[8] The formal grievance was responded to on January 24, 2013, but the stamp on that document reveals it was not mailed to Mr. Glenn until February 6, 2013. Doc. 67, Ex. K (doc. 67-8 at 3); *see also* doc. 67, Ex. I (doc. 67-6 at 3) and doc. 67, Ex. J (doc. 68-2 at 2). Accordingly, 13 of the 15 calendar days elapsed before Mr. Glenn was even provided the response. Delay by the Department of Corrections made it virtually impossible for Mr. Glenn to submit a timely appeal. Notwithstanding, Mr. Glenn's appeal does not appear to have been rejected because it was not timely submitted within 15 days from the response.

be "in non-compliance with Chapter 33-103 . . . because [his] grievance at the institutional level was determined to be in non-compliance with the requirements of the rule." Doc. 67, Ex. K (doc. 67-8 at 2). That response was clear and Mr. Glenn was made aware that he was "past the time frame for grieving this issue." *Id.*

In this case, Mr. Glenn was attempting to grieve an issue that was several months past the grievance time frames. Although he reiterated that he had lost his finger, had been in a great deal of pain, and "required the assistance of another inmate to write" his grievance, *see* doc. 67, Ex. I (doc. 67-6 at 2), he never specifically requested leave to file grievances beyond the 15-day time period. The Department was never requested to exercise discretion in permitting an untimely grievance to go forward. Mr. Glenn is left with a clear result - he did not properly exhaust administrative remedies. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford, 548 U.S. at 90-91, 126 S.Ct. at 2386.

> A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction, and under respondent's interpretation of the PLRA noncompliance carries no significant sanction. For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

*Id.* at 95, 126 S.Ct. at 2388.

Case No. 4:13cv160-RH/CAS

It is evident that Mr. Glenn did not properly exhaust his available administrative remedies. The renewed motion to dismiss for failure to exhaust administrative remedies should be granted pursuant to 42 U.S.C. § 1997e and 28 U.S.C. § 1915(e)(2)(B)(ii). "A claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted." Rivera v. Allin, 144 F.3d 719, 731 (11th Cir. 1998) (holding that dismissal for failure to exhaust remedies is counted as a strike under § 1915(g)), *abrogated on other grounds by* Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007));[9] *see also* Nelson v. Singer, 2013 WL 2285088, at *1 (M.D. Fla. May 22, 2013) (stating that although some courts may disagree with Rivera, the Court "must follow the Eleventh Circuit's precedent" and citing to Anderson v. Donald, 261 F. App'x 254, 255 (11th Cir. 2008)); Wright v. Mims, No. 1:13cv845, 2013 WL 4013163, at *2 (N.D. Ga. Aug. 5, 2013) (citing Thomas v. Parker, 672 F.3d 1182, 1183-84 (11th Cir. 2012)(concluding that a complaint dismissed for mixed reasons such as failure to state a claim and failure to exhaust should be counted as a strike under § 1915(g), relying on Pointer v. Wilkinson, 502 F.3d 369, 377 (6th Cir. 2007)(same))); *but see* Turley v. Gaetz, 625 F.3d 1005, 1012 (7th Cir. 2010) (holding "that the dismissal of an action, in part for failure to exhaust and in part as frivolous, malicious or for failure to state a claim does not constitute a strike under § 1915(g)."). An unexhausted claim is not a claim upon which relief may be granted and dismissal under § 1915(e)(2)(B)(ii) is appropriate.

---

[9] Jones v. Bock held that exhaustion was not a pleading requirement but an affirmative defense and "noted, that is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim." 549 U.S. at 216.

Case No. 4:13cv160-RH/CAS

**RECOMMENDATION**

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant Richardson's renewed motion to dismiss, doc. 67, be **GRANTED** and this case by **DISMISSED** for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997(e) and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2), and that the Order adopting this Report and Recommendation direct the Clerk of Court to note on the docket that this cause was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**IN CHAMBERS** at Tallahassee, Florida, on April 2, 2015.

 S/   Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**